IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **HEIDI EASTUS,** | § | **CIVIL ACTION NO. 4:18-cv-1896** |
| *Plaintiff*, | § | |
| | § | |
| VS. | § | |
| | § | |
| **ISS FACILITY SERVICES, INC.,** | § | |
| **LUFTHANSA SYSTEMS** | § | |
| **AMERICAS, INC.,** | § | |
| **DEUTSCHE LUFTHANSA, A.G. d/b/a** | § | |
| **LUFTHANSA GERMAN AIRLINES,** | § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff HEIDI EASTUS ("Eastus" or "Plaintiff") files her Original Complaint complaining of Defendants ISS FACILITY SERVICES, INC., LUFTHANSA SYSTEMS AMERICAS, INC., and DEUTSCHE LUFTHANSA, A.G., d/b/a LUFTHANSA GERMAN AIRLINES (collectively "Defendants"), and for causes of action would respectfully show the Court and jury:

**I.
PARTIES**

1. Plaintiff is an individual residing in Montgomery County, Texas, which is located in the Southern District of Texas, Houston Division. Plaintiff worked for Defendants from in or about November 2014 until in or about July 2017 when she was terminated shortly after complaining of Defendants' discrimination and harassment.

2. Defendant ISS Facility Services, Inc. ("ISS") is a corporation organized under the laws of Delaware, with its principal place of business in San Antonio, Texas. Defendant ISS may be served by delivering a copy of the summons and complaint to its registered agent, C T

Corporation System, which is located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever else it may be found.

3. Defendant Lufthansa Systems Americas, Inc. ("Lufthansa Americas") is a New York corporation with its principal place of business in New York. Defendant Lufthansa Americas has been registered to transact business in Texas with the Texas Secretary of State since in or about 2009. Defendant Lufthansa Americas may be served by delivering a copy of the summons and complaint to its registered agent, C T Corporation System, which is located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever else it may be found.

4. Defendant Deutsche Lufthansa, A.G., d/b/a Lufthansa German Airlines ("Deustche Lufthansa") is a German Corporation with its principal place of business located at Von-Gablentz-Str. 2-6, 50679 Cologne, Germany. Its registered agent for service of process is unknown at this time.

5. Lufthansa Americas and Deutsche Lufthansa are referred to collectively herein as "Lufthansa."

6. At all relevant times, ISS provided forward-facing passenger handling for its client Lufthansa in Houston, Texas at George Bush International Airport ("IAH"), which is located in the Southern District of Texas, Houston Division.

7. Lufthansa and ISS are collectively referred herein as "Defendants."

## II.
## JURISDICTION AND VENUE

8. Jurisdiction is proper in this court pursuant to 28 U.S.C. §1331 (federal question jurisdiction), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000 *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("§ 1981").

9. Venue is proper in the Southern District of Texas, because a substantial part of the events or omissions giving rise to this suit occurred in this District. 28 U.S.C. § 1391.

## III.
## JOINT EMPLOYER FACTS

10. ISS and Lufthansa are Joint Employers of Plaintiff.

11. Ms. Eastus worked as Account Manager for ISS's client Lufthansa at IAH.

12. Ms. Eastus supervised approximately 25 part-time and 2 full-time ISS ticketing and gate agents as they provided forward-facing passenger handling for Lufthansa (meaning ISS employees would be interacting directly with Lufthansa passengers and would be representing themselves as Lufthansa to the passengers). Ms. Eastus was closely controlled in her work by Lufthansa and its Managers.

13. Ms. Eastus and her subordinates (all ISS employees) were each given an e-mail address with a Lufthansa domain name ("@dlh.de").

14. Lufthansa directed to ISS that Ms. Eastus be "taken off the Lufthansa account as the Account Manager" for not responding to an e-mail from a Lufthansa Station Manager and/or failing to "acknowledge the presence of the Lufthansa Duty Manager." A copy of relevant e-mails between Gerry Kramer (Lufthansa) and Simon Robinson (ISS) are attached as **Exhibit 1** and incorporated by this reference.

## IV.
## FACTS

**A. Ms. Eastus Recruited Out Of Retirement To Manage IAH Accounts.**

15. ISS is a worldwide provider of aviation and airport services, serving over 100 million passengers every year in North America alone. *See* **Exhibit 2** which is incorporated by this reference.

16. After a successful 26-year career with Air France-KLM ("AF-KLM"), ISS recruited Ms. Eastus out of retirement to manage its first forward-facing passenger handling contract with AF-KLM at IAH.

17. In or about November 2014, Ms. Eastus began performing work for ISS at IAH managing the AF-KLM account.

18. Ms. Eastus managed the AF-KLM account until in or about November 2015 when she began work on the bidding of a similar contract between ISS and Lufthansa.

19. In or about March 2016, Ms. Eastus began work full time as Account Manager on the Lufthansa account supervising ISS ticketing and gate agents working Lufthansa flights. She also recruited and hired employees as well as performed payroll and budgeting functions.

### B. Lufthansa Managers' Escalating Discrimination Against ISS Employees.

20. During her time managing the AF-KLM account, discriminatory comments were directed by AF-KLM staff to Ms. Eastus and employees she managed.

21. For example, an AF-KLM duty manager told Ms. Eastus that ISS should not hire an African-American applicant Ms. Eastus was interviewing because the applicant "look[ed] like a gorilla." Because Ms. Eastus felt the applicant was the best qualified for the job, she hired the applicant over AF-KLM's objections.

22. Once Ms. Eastus transitioned to the Lufthansa account, the discriminatory comments and acts escalated.

23. Lufthansa employees directed Ms. Eastus to assign (or not assign) work to specific ISS employees not based on employee qualifications or performance but rather race, color, national origin, and/or sex. Ms. Eastus believed these actions not only violated the scope of the contract but were discriminatory.

24. An experienced African American employee, Abdou, was not allowed by a Lufthansa manager to work certain positions because he did not "speak well." *See* **Exhibit 3** which is incorporated by this reference.

25. A Hispanic employee, Jordan, was pulled off his position at the gate by a Lufthansa manager, threatened with retraining (against Ms. Eastus instructions otherwise) and not allowed to try for a promotion because of his ethnicity/race. *See* **Exhibit 4** which is incorporated by this reference.

26. An Asian employee, Alex, was not allowed to work the first class check-in because a Lufthansa manager didn't like the way his face looked. *See* **Exhibit 3** ("[T]he employees start to realize that they aren't 'allowed' by LH staff to work certain positions.").

27. A Lufthansa manager also attempted to prevent Ms. Eastus from accommodating the request of female (lesbian) employee to wear the male ISS uniform instead of the female version.

        **C.**      **Ms. Eastus Makes Repeated Complaints To ISS But Is Ignored.**

28. Ms. Eastus began raising these concerns to her supervisor, Simon Robinson ("Robinson"), in or about May 2016. Ms. Eastus was particularly concerned about the escalating discriminatory and harassing conduct by Lufthansa following the discriminatory conduct she witnessed while working as the AF-KLM Account Manager.

29. Robinson instructed Ms. Eastus to start documenting her concerns, which she did.

30. From June 2016 through October 2016, Ms. Eastus documented numerous incidents of harassment and discrimination by Lufthansa management against ISS employees.

31. In or about August 2016, both Robinson and Sheila Jennings ("Jennings") of ISS Human Resources visited IAH to personally observe the issues Ms. Eastus was reporting with

Lufthansa. However, upon information and belief, no formal investigation was conducted or corrective measure taken by ISS to remedy the situation.

32. After ISS told Lufthansa that Ms. Eastus had been reporting Lufthansa management's actions to Human Resources, Lufthansa managers targeted Ms. Eastus personally. On or about September 13, 2016, Ms. Eastus and others overheard Lufthansa Station Manager Gerry Kramer yelling during a meeting which included ISS employees for Lufthansa Duty Manger Dorit Rosenburg ("Rosenburg") to "give [Eastus] hell" or words to that effect. *See* **Exhibit 5** which is incorporated by this reference.

33. The following day, on or about September 14, 2016, Ms. Eastus filed a formal complaint of a hostile work environment on behalf of herself and her subordinates to Jennings and Robinson. Attached as **Exhibit 6** and incorporated by this reference, is a September 14, 2016 e-mail chain between Ms. Eastus and Robinson titled "Report on Hostile Work Environment." Specifically, Ms. Eastus reported that Lufthansa Managers "were sent letters last month from their HR department telling them that they can't interfere with ground handling staff. Meanwhile [Rosenburg] continues to do so on a daily basis." *See* **Exhibit 6**.

34. Robinson initially responded to Ms. Eastus' complaint stating "[t]his is why I have insisted that we document her behavior and address it, now that you have witnesses from your meeting, we have more to share with HR." *See* **Exhibit 7**, which is incorporated by this reference.

35. On or about September 19, 2016, Robinson informed Ms. Eastus that he would present a formal complaint regarding Ms. Eastus' concerns within the week. *See* **Exhibit 8** which is incorporated by this reference.

36. On or about September 22, 2016, Ms. Eastus contacted Jennings directly to request an in-person meeting with Jennings and Robinson. Jennings did not respond to Ms. Eastus'

request.

37. On or about October 7, 2016, Ms. Eastus again requested action on her formal complaint. Robinson assured Ms. Eastus that her complaint had been escalated to ISS Human Resources and they would be investigating. *See* **Exhibit 9** which is incorporated by the reference.

38. On or about October 11, 2016, Ms. Eastus provided Robinson and Jennings with numerous written complaints and documented incidents of harassment and discrimination by Lufthansa against ISS employees as well as other documentation of her attempts to address the situation with both ISS and Lufthansa. *See* **Exhibit 10** which is incorporated by this reference.

39. That same day, Robinson told Ms. Eastus that ISS would be contacting Lufthansa regarding Ms. Eastus' complaints. Attached as **Exhibit 11** and incorporated by this reference, is an October 10, 2016 e-mail chain between Ms. Eastus and Robinson wherein Ms. Eastus, as requested, provided Robinson contact information for Lufthansa Human Resources.

40. In or about December 2016, Robinson informed Ms. Eastus that an "all-hands on deck" meeting would be held at IAH to address the on-going complaints (including her formal complaint) on both the AF-KLM and Lufthansa accounts. Robinson specifically stated the ISS General Counsel who had "a firm understanding of the law" would be there to address the situation including "certain types of client behavior from both of our Passenger Services Contracts in Houston." *See* **Exhibit 12** which is incorporated by this reference.

41. On or about December 23, 2016, Ms. Eastus, Robinson, ISS Office Manager (Zobida Auguste), AF-KLM Account Manager (James Burke) and a trainer (Miriam Navarro) attended a meeting led by then ISS General Counsel and Executive Vice President of People and Culture, Kelli Cubeta ("Cubeta"). The attendees specifically discussed the racial slurs, discrimination, harassment and hostile work environment Lufthansa perpetuated. The attendees

also specifically discussed that the issue was more than Lufthansa not "liking" certain people or playing favorites, but rather Lufthansa interfering with ISS employees' ability to work because of their race, color, sex, gender, etc. However, upon information and belief, no action was taken to address Ms. Eastus' complaints after this meeting.

### D. Ms. Eastus Develops Medical Condition Due To Continuing Discrimination.

42. After receiving no response to her many complaints opposing discrimination and harassment in the workplace, in or about August 2016 for the first time Ms. Eastus developed stress-induced hives which would break out all over her body. She was diagnosed with stress-related urticaria. The treatment for her condition required numerous daily medications including some which have the side effect of drowsiness.

43. In or about January 2017, Ms. Eastus informed Robinson that she was undergoing medical treatment for stress-related urticaria which her physician believed was triggered by work-related stress. Robinson immediately told Ms. Eastus to work from home.

44. Ms. Eastus continued working full time and was able to complete all of her duties primarily from home. On or about March 16, 2017, Robinson cancelled a scheduled meeting with Ms. Eastus at IAH and informed her that she should no longer report to the airport.

45. Because she had received no action on her prior complaint, on March 17, 2017, Ms. Eastus filed another formal complaint directly to ISS's North American CEO (Phil McVey), Cubeta, Jennings, Robinson, and other ISS senior leadership. *See* **Exhibit 13** which is incorporated by this reference. The only response she received regarding this complaint was from Jennings informing Ms. Eastus that she needed to fill out medical leave paperwork, which Ms. Eastus had not requested, and only filled out because ISS required it. *See* **Exhibit 14** which is incorporated by this reference.

46. On or about April 11, 2017, Ms. Eastus contacted Jennings again asking why a replacement had been hired for her position and what were "the intentions of ISS in regards to my employment." *See* **Exhibit 15** which is incorporate by this reference. Jennings responded that she "assumed" Ms. Eastus was interested in medical leave and that her employment status had not changed.

47. Ms. Eastus was qualified and performing her position working remotely full time. While she filled out the medical leave forms required by ISS, she did not take any medical leave. *See* **Exhibit 16** which is incorporated by this reference.

48. Ms. Eastus repeatedly requested to meet with Robinson to discuss the status of her position as Lufthansa Account Manager. Robinson cancelled multiple times and no one from ISS otherwise met with Ms. Eastus to discuss her prior complaints or her position. Likewise, ISS did not seek clarification or engage with Ms. Eastus to discuss accommodations she might need due to her medical condition.

      E.      **ISS Fires Eastus (At Lufthansa's Direction) Rather Than Address Complaints.**

49. On or about June 22, 2017, Cubeta called Ms. Eastus and apologized for not following up on Ms. Eastus' complaints. The following day, Cubeta e-mailed Ms. Eastus to explain that Ms. Eastus had been removed from her position because Lufthansa requested a change. Cubeta also stated that removing Ms. Eastus from her position as Lufthansa requested "would not require [Ms. Eastus] to be in the environment that [she] raised a concern about" and Robinson shared. *See* **Exhibit 17** which is incorporated by this reference.

50. Ms. Eastus later learned that the day before she was told by Robinson not to report to the airport any longer (on or about March 15, 2017), Lufthansa Station Manager Gerry Kramer directed ISS to remove Ms. Eastus from her position for not responding to an e-mail from him

and/or failing to "acknowledge the presence of the Lufthansa Duty Manager." *See* **Exhibit 1**. Upon information and belief, Lufthansa knew removing Ms. Eastus from their account would effectively terminate her employment with ISS.

51. Ms. Eastus held a good-faith, reasonable belief that ISS and Lufthansa were discriminating against the employees Ms. Eastus supervised on the basis of their race, color, national origin, and/or sex.

52. Rather than addressing Ms. Eastus' complaints, Ms. Eastus was removed from her position and then terminated because she reported and made continued complaints about the discriminatory actions of Lufthansa and ISS.

### F. Ms. Eastus Not Considered For Other Positions Because Of Her Complaints.

53. As Lufthansa Account Manager, Ms. Eastus was a full-time, salaried employee with medical benefits. After removing her as Account Manager on the Lufthansa account, ISS proposed Ms. Eastus work on payroll eight hours per week at $13 per hour, with no medical benefits. Ms. Eastus was not offered any other position.

54. ISS has two Account Managers in the Houston area: one for the AF-KLM account and one for the Lufthansa account. Upon information and belief, the AF-KLM position could have been offered to Ms. Eastus rather than terminating her, as at the time ISS was switching the Lufthansa Account Manager that was hired to replace her to the AF-KLM account.

55. Ms. Eastus was not considered for the AF-KLM Account Manager position, despite the fact that she had successfully managed the AF-KLM account for ISS in the past and retired from AF-KLM after 26 years.

## V.
## ADMINISTRATIVE PREREQUISITES SATISFIED

56. Ms. Eastus timely filed a Charge of Discrimination with the Equal Employment

Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC") on October 17, 2017 against Defendants, which is attached as **Exhibit 18** and incorporated by this reference.

57. The EEOC issued a Notice of Right to Sue to Plaintiff dated March 29, 2018, which is attached as **Exhibit 19** and incorporated by this reference.

58. Plaintiff has also received a Notice of Right to Sue from the TWC, a true and correct copy of which is attached as **Exhibit 20** and incorporated by this reference.

59. This suit is timely filed after receipt of Plaintiff's EEOC and TWC Notices of Right to Sue.

## VI.
## CAUSES OF ACTION:

### COUNT I:
### RETALIATION IN VIOLATION OF TITLE VII AND TCHRA

60. Plaintiff hereby adopts and incorporates by reference all of the foregoing paragraphs, allegations, and Exhibits, as if set forth herein again.

61. Plaintiff held a good-faith, reasonable belief that Defendants discriminated against their employees on the basis of race, color, national origin, and/or sex.

62. Plaintiff engaged in protected activity by opposing a practice made unlawful by Title VII and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001 et seq. ("TCHRA").

63. Defendants retaliated against Plaintiff in violation of Title VII and TCHRA, when Defendants took adverse employment actions against Plaintiff because she engaged in protected activity by opposing a practice made unlawful by Title VII and TCHRA.

64. Plaintiff's protected activity was at least a substantial or motivating factor in Defendants' deliberate decisions to terminate Plaintiff, not consider Plaintiff for other available positions, and/or fill positions with one or more individuals outside of the protected class.

65. Defendants were at all relevant times Plaintiff's "employer" within the meaning of Title VII and TCHRA and employed the requisite number of persons to qualify as employers under each Act.

## COUNT II:
## RETALIATION IN VIOLATION OF § 1981

66. Plaintiff hereby adopts and incorporates by reference all of the foregoing paragraphs, allegations, and Exhibits, as if set forth herein again.

67. Plaintiff held a good-faith, reasonable belief that Defendants discriminated against their employees on the basis of race and/or color.

68. Plaintiff engaged in protected activity by opposing a practice made unlawful by § 1981.

69. Defendants retaliated against Plaintiff in violation of § 1981, when Defendants took an adverse employment action against Plaintiff because she engaged in protected activity by opposing a practice made unlawful by § 1981.

70. Plaintiff's protected activity was at least a substantial or motivating factor in Defendants' deliberate decisions to terminate Plaintiff, not consider Plaintiff for other available positions, and/or fill positions with one or more individuals outside of the protected class.

71. Defendants were at all relevant times Plaintiff's employer within the meaning of § 1981.

## COUNT III:
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA AND TCHRA

72. Plaintiff hereby adopts and incorporates by reference all of the foregoing paragraphs, allegations, and Exhibits, as if set forth herein again.

73. Defendants discriminated and retaliated against Plaintiff in violation of the ADA and TCHRA, because of her perceived disability, record of a disability and/or disability when Defendants terminated Plaintiff and refused to hire her into other available positions.

74. Defendants were at all relevant times Plaintiff's "employer" within the meaning of the ADA and TCHRA and employed the requisite number of persons to qualify as employers under each Act.

## VII.
## DAMAGES AND ATTORNEYS' FEES

75. Because of Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including, but not limited to mental anguish, emotional distress, and significant economic loss.

76. Plaintiff is also entitled to punitive damages, because Defendants acted with malice or reckless indifference to her rights under ADA, Title VII, TCHRA and § 1981, and because liability can be imputed to the companies.

77. Defendants' wrongful conduct has made it necessary for Plaintiff to retain the undersigned attorneys to represent her in bringing and prosecuting this action, and, if necessary, for legal representation on appeal. Plaintiff therefore seeks recovery of all reasonable attorneys' fees and costs pursuant to ADA, Title VII, TCHRA, and § 1981.

# VIII.
# JURY DEMAND & PRAYER

78. Plaintiff demands a trial by jury on all issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

79. Plaintiff prays that Defendants be cited to appear and answer in this suit and that, upon final trial or hearing she be awarded:

    a. Equitable relief, including back and front pay and lost benefits;

    b. Compensatory damages, including emotional distress;

    c. Punitive damages;

    d. Pre- and post-judgment interest;

    e. Attorneys' fees;

    f. Costs of suit, including expert fees; and

    g. All other relief to which she may be entitled.

**RESPECTFULLY SUBMITTED**,

*/s/ Amber L. Karns*_____
**Amber L. Karns**
Texas Bar No. 24080669
SD of TX No. 2536020
akarns@starzyklaw.com
**Megan M. Mitchell**
Texas Bar No. 24073504
SD of TX No. 2174572
mmitchell@starzyklaw.com
**Starzyk & Associates, P.C.**
10200 Grogan's Mill Rd, Suite 300
The Woodlands, Texas 77380
Telephone: (281) 364-7261
Facsimile: (281) 364-7533

**ATTORNEYS FOR PLAINTIFF
HEIDI EASTUS**