# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT
## 4:18-CV-1896

No. 19-20258

United States Court of Appeals
Fifth Circuit
**FILED**
May 27, 2020
Lyle W. Cayce
Clerk

United States Courts
Southern District of Texas
FILED
June 18, 2020
David J. Bradley, Clerk of Court

HEIDI EASTUS,

        Plaintiff - Appellant

v.

ISS FACILITY SERVICES, INCORPORATED; LUFTHANSA SYSTEMS AMERICAS, INCORPORATED; DEUTSCHE LUFTHANSA, A.G., INCORPORATED, doing business as Lufthansa German Airlines,

        Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas

---

Before OWEN, Chief Judge, and SOUTHWICK and OLDHAM, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Heidi Eastus appeals an order compelling arbitration. She concedes that she signed an arbitration agreement in her employment contract. The sole question here is whether Eastus is exempt from the Federal Arbitration Act under the Transportation Worker Exemption. She is not. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Heidi Eastus' claims relate to her employment with ISS Facility Services, Inc. Her complaint states that she primarily "supervised 25 part-time and 2 full-time ticketing and gate agents" at the George Bush Intercontinental Airport in Houston, Texas. Her employer ISS assigned her to

No. 19-20258

be an account manager for one of its clients at the airport, Deutsche Lufthansa, A.G., Inc., which did business under the name of Lufthansa German Airlines. The agents Eastus supervised "ticketed passengers, accepted or rejected baggage and goods, issued tags for all baggage and goods, and placed baggage and goods on conveyor belts to transport for additional security screening and loading." As needed, Eastus would herself handle passengers' luggage.

Eastus brought employment-discrimination and retaliation claims against ISS and two Lufthansa entities. The defendants filed a motion to compel arbitration based on an arbitration agreement in Eastus' employment contract with ISS. Eastus argued arbitration could not be compelled because she is exempt from the Federal Arbitration Act ("FAA") under what has been labeled the Transportation Worker Exemption. The district court compelled arbitration. It found that Eastus' "job was related to transporting passengers on an airline" and that "[a]ny handling of luggage or passenger property was incidental" to her main job duties. To the district court, that meant Eastus herself was not involved "'in the movement of goods in interstate commerce in the same way that seaman and railroad workers are.'" *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996). Eastus timely appealed.

## DISCUSSION

"We review an order compelling arbitration *de novo*." *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 608 (5th Cir. 2016). The FAA "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Absent a clear statutory exemption to the arbitrability of a plaintiff's claim, courts must "respect and enforce agreements to arbitrate." *Id.*

Section 2 of the FAA defines the class of arbitrable cases:

No. 19-20258

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that employment contracts are contracts "evidencing a transaction involving commerce." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113, 119 (2001).

Under this caselaw, Eastus' signed arbitration agreement is "valid, irrevocable, and enforceable" under Section 2 unless an exemption applies. Eastus argues the following is applicable: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The parties refer to this as the Transportation Worker Exemption. Though the exemption mentions two other categories of workers engaged in foreign or interstate commerce, it does not mention airline employees. Nevertheless, the statutory provision contains a catchall clause. The issue before us is whether Eastus falls into that residual category of workers.

We first analyze the principal caselaw, and we then apply it to this case.

*I. Caselaw interpreting the residual clause*

Before the Supreme Court's splintered 2001 decision in *Circuit City*, most federal courts of appeals, including this one, held that the residual clause language of "other class of workers engaged in foreign or interstate commerce" would "be given a narrow reading," such that it should apply only to employment contracts of "any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and

3

railroad workers are." *Rojas*, 87 F.3d at 748. Uncertainty arose after *Circuit City* because there was no majority opinion, and the reference to this former view was not as clear as, in retrospect perhaps, it should have been.

What the Supreme Court in 2001 did not do is alter the general principle that the language of being "engaged in foreign or interstate commerce" was to be given a narrow construction. *Circuit City*, 532 U.S. at 109. The Court concluded that because "engaged in interstate commerce" is preceded by a listing of specific occupations within the transportation industry, "railroad workers" and "seamen," "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119.

The Court did not itself define "transportation workers." It did, though, state: "Most Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce.'" *Id.* at 112 (citation omitted). Stating what most lower federal appellate courts had done is not the same thing as stating that the Court agreed with the limitation. Justice Souter, in his dissent, though, interpreted that language as the Court's placing its "*imprimatur* on the majority view among the Courts of Appeals." *Id.* at 134–35 (Souter, J., dissenting).

There is not unanimity among the circuits on what to make of the Supreme Court's reference to what had been the majority view pre–*Circuit City*. *Compare Int'l Bhd. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC*, 702 F.3d 954, 956 (7th Cir. 2012) (Court did place its *imprimatur* on the majority view), *with Singh v. Uber Techs. Inc.*, 939 F.3d 210, 223 (3d Cir. 2019) (Court was only summarizing the prior interpretations).

Regardless of other circuits' views, the Fifth Circuit has already stated that the Supreme Court in *Circuit City* was adopting an interpretation "fully consistent with our reasoning in *Rojas*," which is one of the cases expressing

the former majority view. *Brown v. Nabors Offshore Corp.*, 339 F.3d 391, 394 (5th Cir. 2003). The key question in resolving the appeal before us is whether the worker needs to be engaged in the movement of goods. Though that was not the question in *Brown*, we did discuss it in *Rojas*, which this court has held remains the operative standard after *Circuit City*. In *Rojas*, we quoted favorably another circuit's language that workers covered by the exemption are those "actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas*, 87 F.3d at 748 (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 601 (6th Cir.1995)).

We now consider the parties' arguments here.

II. *Whether the residual exemption applies because of a similar dispute resolution to railroad workers*

We first deal with some less substantial arguments.

Eastus initially contends that "employees of airlines are enumerated in the Transportation Worker Exemption in the same way that railroad workers are enumerated." This is an odd argument, because in this context "enumeration" means to list one by one, and airline workers are not on the list. Instead, for an airline worker to fall within the exemption, the airline worker must fit within the exemption's residual clause: "any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Indeed, Eastus concedes that "employees of air carriers are not specifically mentioned in the Transportation Worker" Exemption.

Eastus argues airline employees are particularly closely related to railroad workers because the two are subject to the same dispute resolution provisions of the Railway Labor Act, citing 45 U.S.C. §§ 181–188. The argument is then made that airline employees must be exempt like railroad workers. In *Circuit City*, the Supreme Court referred to the Railway Labor

5

Act, which was nearing passage as the FAA was adopted, and "assume[d] that Congress excluded 'seamen' and 'railroad employees' from the FAA for the simple reason that it did not wish to unsettle established or developing statutory dispute resolution schemes covering specific workers." 532 U.S. at 121. We acknowledge that Congress might reasonably have excluded airline employees from the FAA for the same reason, but Congress did not add them to the list. The dispute-resolution overlap is irrelevant because we are not searching for any similarities, but only whether Eastus' job required her to engage "in the movement of goods in interstate commerce in the same way that seamen and railroad workers are." *Rojas*, 87 F.3d at 748.

### III. *Proper interpretation of* Circuit City

We start with Eastus' two arguments construing *Circuit City*. First, Eastus contends the district court erroneously based its decision on a misinterpretation of *Circuit City*. Specifically, Eastus says the district court incorrectly read *Circuit City* as if the Court itself defined a transportation worker as a worker "actually engaged in the movement of goods in interstate commerce." Second, Eastus follows the first argument by identifying the three times the word "goods" appears in *Circuit City* and by then arguing that "[a]t no time did the Supreme Court use the term 'goods' with the intent to limit the application of the Transportation Worker Exemption to workers who are engaged in the *movement of goods* in interstate commerce."

The district court here seemed to quote *Circuit City* as if the Court itself defined transportation worker as opposed to stating the definition used by a majority of courts of appeals. That interpretation, though, is not legal error. The district court based its ruling on this court's standard in *Rojas*. As noted earlier, we have already held that the pre–*Circuit City* transportation-worker standard in *Rojas* remains operative. *Brown*, 339 F.3d at 394. Further,

No. 19-20258

regardless of the context in which *Circuit City* used the word "goods," it did not disapprove of the *Rojas* standard. We stay on course, then, to determine if Eastus herself was engaged in the movement of goods.

*IV.   Whether Eastus was engaged in the movement of goods*

First, we reject Eastus' urging that we adopt a multiple-factor test used in another circuit. *See Lenz v. Yellow Transp.*, 431 F.3d 348, 352 (8th Cir. 2005).[1] No other circuit has adopted this test, and in our view, it unduly adds to the complexity of the analysis.

Eastus also argues that even under the *Rojas* standard, she engaged in the movement of goods. To support this argument, Eastus broadly defines "goods" in two ways. Eastus contends she was engaged in the movement of goods because "[e]very passenger who gets on an airplane brings some form of goods with them whether they be in a purse, pocket, bag, backpack, briefcase or luggage." She also relies on a recent Third Circuit decision that held transportation workers who transport passengers instead of goods may still be excluded from the FAA under the residual clause. *See Singh*, 939 F.3d at 226. The district court did in part rely on a distinction between passengers and

---

[1] The non-exclusive factors include:

first, whether the employee works in the transportation industry; second, whether the employee is directly responsible for transporting the goods in interstate commerce; third, whether the employee handles goods that travel interstate; fourth, whether the employee supervises employees who are themselves transportation workers, such as truck drivers; fifth, whether, like seamen or railroad employees, the employee is within a class of employees for which special arbitration already existed when Congress enacted the FAA; sixth, whether the vehicle itself is vital to the commercial enterprise of the employer; seventh, whether a strike by the employee would disrupt interstate commerce; and eighth, the nexus that exists between the employee's job duties and the vehicle the employee uses in carrying out his duties (i.e., a truck driver whose only job is to deliver goods cannot perform his job without a truck).

*Lenz*, 431 F.3d at 352.

No. 19-20258

goods, but we may affirm on "any ground supported by the record, even if it is different from that relied on by the district court." *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). Important to us is that though the passengers moved in interstate commerce, Eastus' role preceded that movement.

At least two courts since *Circuit City* have held that workers who load or unload goods that others transport in interstate commerce are not transportation workers. *See Saxon v. Sw. Airlines Co.*, No. 19-CV-0403, 2019 WL 4958247, at *1 n.2, *7 (N.D. Ill. Oct. 8, 2019) (holding airline ramp supervisor whose job duties presumably included loading and unloading luggage to and from airplanes was not a transportation worker); *Furlough v. Capstone Logistics, LLC*, 2019 WL 2076723, at *7 (N.D. Cal. May 10, 2019) (holding warehouseman whose job duties included "loading, unloading, and handling freight; communicating with drivers; and monitoring conditions on the docks" was not a transportation worker). Of course, these opinions have no precedential effect, but we identify them as examples of how federal judges have analyzed similar issues. Further, there is a distinction between handling goods and moving them in Section 1 of the FAA's enumeration of seamen and not longshoremen, who are the workers who load and unload ships. The FAA does not apply to longshoremen. That conclusion comes first from the Supreme Court's holding that whether defined "under the Jones Act or general maritime law, seamen do not include land-based workers." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 348 (1991). The other step is that this court uses the Jones Act's definition of "seaman" to determine Section 1 exemption from the FAA. *See Brown*, 339 F.3d at 395.

Eastus properly conceded during oral argument that longshoremen and delivery-truck loaders are not transportation workers under Section 1. Loading or unloading a boat or truck with goods prepares the goods for or

8

No. 19-20258

removes them from transportation. In this context, Eastus' duties could at most be construed as loading and unloading airplanes. She was not engaged in an aircraft's actual movement in interstate commerce. The exemption in the FAA does not apply to her, and arbitration was validly ordered to resolve her dispute.

AFFIRMED.